Good morning, your honors. May the police court, my name is Chi Hsien-Li and I represent the petitioner. In this case, the BIA found, did not to the endorse a signed application based upon adverse credibility finding. Can I ask you a question as we begin? It's my understanding that the BIA adopted the IJ decision verbatim, correct? That's right, your honor. So that means that the IJ's decision as well as the BIA decision is fully before us, correct? That's correct, your honor. And therefore, when I'm applying the substantial evidence review, the factual findings that are in the IJ's decision are as much a part of this decision as those in the BIA decision, right? Exactly, your honor. And as I understand it as well, under present law, even minor inconsistencies that have a bearing on the petitioner's veracity may constitute the basis for such a determination, correct? That's correct, your honor. And a person who is deemed incredible as to one material fact may be disbelieved in all other respects, right? Yes, your honor. Well, is that right? I mean, for the falsus maxim to apply, can an inconsistency go that far, or does it have to be intentional? I believe it has to be material and relevant to the assignment claim in this case. In this case, first of all, we don't believe, your honor, that there is false information here. Because even though, according to the IJ, petitioner provided false information in her visa application, but as it turned out that the petitioner, she testified that she did work for one of her relatives. Well, let's go at that just a little bit. She stated in her visa application that she was the assistant to the director of the company, right? Yes, your honor. And that wasn't true, was it? It wasn't true. It wasn't true that she was the assistant to the director. Yes, she was not that. She did testify that she worked for one of her... What she testified, she stated in her visa application she was the assistant. Then, she comes back and testifies something, but she says she at one time worked at the school and admitted she worked full time for a trading company. That's right, your honor. She admitted she put on her application because it looked more favorable by having it as the assistant to the director. Yes, your honor. Did she ever say that she wasn't the assistant? No, she never said that. And is there any extrinsic evidence that she wasn't the assistant? No, your honor. And she did testify that she worked on weekends to help out one of her relatives to run more like an aftercare school, aftercare care. But she didn't even list that employment on her asylum application, right? That's right, your honor. Even though she relied on it on her visa application? Yes, your honor. Now, wouldn't that normally, in my mind, based on her case law, be a big deal? But the fact that she relied on it on her visa application and then didn't even list it on her asylum application makes it a lot bigger deal, doesn't it? No, your honor. Then it would be considered as an omission in her asylum application. In this court, omission usually is less reflective of the jurors' honesty or dishonesty. Well, I guess that's what we're trying to figure out here. And I guess that's why, in the first place, she doesn't say what she really was. In the second place, she doesn't list it on her asylum application. And then the IJ says the tendency of her to pick and choose what information she shares with the government does not reflect well. So it seems to me that that is under this idea that even minor inconsistencies that have a bearing on the veracity, that kind of lays it out. I agree with you, your honor. But then let's assume that the falsity did occur. But then the IJ still has to consider in the context where the falsity occurred. In this case, Katina admitted on record that she provided that piece of information to better her chance to come to the United States. In this circuit, the law is clear that a genuine refugee may lie in fleeing from the country of persecution or secure entry to the United States. This is exactly what happened here. Just to be clear, the answer that you're giving now is sort of an argument in the alternative accepting the premise of Judge Smith's question. You're not conceding that there actually was a falsehood, are you? No, your honor. And even if it were false, Katina was still excusable in providing that information in order to gain entry into the United States after she was forced to undergo involuntary abortion, which would rise to the level of past persecution. Let's go to the savvy. The IJ says that she was savvy in a way that suits her schedule and her desires. And he bases that on the idea, and let me just put it in his words. She was able to extend her status here before she applied for asylum by applying for the F-1 visa and multiple extensions. Once she got the extension, she did not finish or pursue the program she received, the extensions to complete. And that's why it demonstrates a savvy of knowing how to keep herself here by whatever means without regard to the purposes of the visa she was using. Seems to me to be obvious. Well, I think, your honor. I mean, I'm just laying out the facts is what she did. Yes, sir. I think Katina's compliance with the immigration law in the U.S. does not in any way detract from his overall credibility. Okay. Well, your honor, my time is running out, so I would like to reserve the remainder of my time for rebuttal. Okay, you may. Thank you. And we'll move to the government. Morning, your honors. May it please the court. My name is Kose Ugamori, and I represent the United States Attorney General in this case. Before I begin, I'd like to make a correction to the government's answering brief. On page 30 and 32 of the brief, it states that the petitioner never attended, actually never attended the community college, but as shown in the record and as the immigration judge found, she did attend for a semester, about a semester, before she quit. Nonetheless, it's still the government's position that this petition for review should be denied because the evidence does not compel the conclusion that the petitioner provided credible testimony in support of her application for asylum and withholding of removal, and the corroborating evidence did not otherwise independently establish her eligibility for relief and protection. Now, as the agency found in this case, there's not one factor that's determinative of the adverse credibility determination in this case. However, a confluence of all the factors considered together, the totality of the evidence, paints a mosaic that substantially supports the adverse credibility determination in this case. What work, then, does the Bourbon adoption of the IJ's falsus determination do? So you're not standing on the falsus determination? That's part of the analysis, yes. Well, I think the nature of the falsus maxim is that it can be the entire analysis, and I'm just trying to understand how much weight the government is putting on that in terms of wiping out any questions of credibility elsewhere or whether it's just a piece of the puzzle. Does the visa play into other things in the balance, or are you standing on the falsus maxim where everything else would not be credible? So as the board stated, the falsus maxim does apply in this case. However, there are additional discrepancies as well. So the falsus maximum could support the adverse credibility determination. However, as the board stated, in this case, it's the confluence. So on the falsus, then, what evidence in the record would we find to support substantial evidence that this was a material and intentional falsehood as to the visa? So there's two parts to this. So as this court has said in Ani v. Bondi recently in 2025, if there is a deliberate deception, that may be sufficient to support an adverse credibility determination. Deception can certainly be a factor in supporting an adverse credibility determination. So first, let's look at the falsehood. So there's a false embellishment in this case. The petitioner claimed in her visa application that her occupation was assistant to the president for an art school. However, she doesn't list that occupation in her asylum application, and when she's confronted with this inconsistency, she gives the explanation that, well, it was actually her family's business. It only ran on the weekends, and she was just there to help. So as the immigration judge found, this was highly misleading. Well, why was it? So what is the government's view? Do you think she wasn't? She didn't have the job at the art school? Well, we don't know. All we know is that— Well, it seems like you kind of have to have some—you have to pick a theory. If you're going to say that she said something that was false, you need to point to something she said and point to what the reality is and show that they're different from each other. So what is your view of what the falsehood was? It is undisputed that the art school job was not her full-time occupation, and yet she represented that part-time occupation as her full-time occupation. Now, how do we know that? Is the student visa application in the record? It is not, but that has never been challenged below, and it hasn't been challenged before this court as well, so it's both unexhausted and waived. What's unexhausted? Any challenge now that the visa application should have been submitted as part of the evidence has never been brought by Petitioner's Counsel. But we have to find substantial evidence, and the IJ has to find substantial evidence in support of this falsehood. So if it's not in the record, we can't find it. I'm not sure it's a question of presentation. It is in the record, Your Honor. It is in the testimony. And in the testimony, Petitioner admitted that she claimed that this was her occupation when, in fact, her real occupation was at a trading company. And that part is not disputed, Your Honor. And the immigration judge specifically found that the Petitioner represented this part-time job as her full-time occupation. And this is material, Your Honor, in the sense that in order to get a non-immigrant visa, an F-1 student visa, you have to show non-immigrant intent. And showing a stronger connection to your country of origin tends to show that you have an intent to return to that country. And saying that you're an assistant to the president of an art school sounds better, as she admitted in her testimony, than if she had said she was, quote-unquote, staff at an international firm, which she put in her assignment application but not in her visa application. How do you respond to the argument that these inconsistencies upon which the BIA relied were only minor? It seems to me that's the, if you will, the evidence of the questions that are in front of you. They're trying to say, no, this isn't real. This is just minor. So how do you respond to that? As Your Honor noted, even minor inconsistencies may support an adverse credibility determination. And here, the falsehood is there. And the fact that the petitioner has a demonstrated history of being able to navigate United States immigration law, the fact that she has a high level of education, a four-year university degree in China, as well as a master's degree in the United States, that savviness tends to go to the deliberateness of her misrepresentation. But only if there is, in fact, a misrepresentation. You're not claiming that familiarity with immigration law is a reason by itself to infer that a person is dishonest, are you? Absolutely not, Your Honor. But what it tends to show is intent, that if somebody knows what she's doing and then she selects which information to provide. And in her visa application, she puts forward her part-time position because it just sounds better. Does the visa application use the word occupation? I know that's the word the IJ used in paraphrasing the application, but is that actually in the application? We don't have the application, so we don't know. Presumably it's a standard form. What does it say in the form? I'm not familiar with the actual form, Your Honor. But in the testimony, that's the way it was presented, that it was an occupation. Well, no, I mean, in the question that was asked, I mean, the questions are not the testimony, right? I don't know that Petitioner used the word occupation in describing what she had said. Your Honor, I think the bottom line here, though, is that the immigration judge found so and that there is substantial evidence in the transcript that supports that finding. And that is what this Court reviews. Whether there is evidence compelling a contrary conclusion, and if there is evidence in the testimony that supports the IJ's finding, then that finding is conclusive upon this Court, unless any reasonable adjudicator will be compelled to the contrary. And it's not only the falsity here. She also admitted that she applied for the second F-1 visa because she wanted to stay in the United States. Well, that's an admission of a deliberate deception once again because an F-1 visa is a temporary visa, and you have to show that you intend to return to your country. And yet she applied for her second F-1 visa explicitly because she did not want to return to her country. And then, in fact, after attending the school for about one semester, she stopped going. So she had no intent to fulfill the conditions of the F-1 visa that was granted to her. What are you going to make of the corroboration issue? So taking the IJ's decision and then the Board's gloss on it, the IJ determines the lack of corroboration, shows how the flimsy explanation for how her documents were lost lowered her credibility for the foregoing reasons the Court finds the respondent not credible. The Board says that this is kind of the proper two-step, but I guess that just isn't that clear to me from the issue. So was Wren triggered here? No, Your Honor. Why not? It was not because Petitioner is not credible. And what the immigration judge and the Board is referring to is that once she was found not credible, there was no corroborating evidence that would rehabilitate that credibility. The corroborating evidence did not provide an independent basis for relief and protection from removal. And it's clear from the record that that's the case because Petitioner claimed that both her husband and her mother, who are both in the United States, did not provide any— How is that supposed to—I mean, for example, take the visa application, which seems to be the government's primary argument. To what extent would corroboration by either of these third parties help with that? The corroboration seems to be coming at the Petitioner's asylum claim, not the IJ's falsest determination. Right. So I think one of the major problems with this case is that the IJ doesn't even know if a forced abortion happened, if any abortion happened, because there's no medical documentation or corroboration in that regard. So that's where Wren seems to teach that, at least in some circumstances, if the IJ found it wanting because of a lack of corroboration, there had to be notice and opportunity to corroborate. We've talked a lot about inconsistencies and falsities so far. None of them that we've talked about so far go to her asylum claim, which was where the corroboration the IJ found was wanting. Well, that's the basis for the falsest maxim, is that if you make a deliberate deception in one respect, then it's hard to believe that a different claim is true. Now, if Petitioner did provide corroboration of, say, her abortion, let's say she had provided the document that proved her abortion, perhaps that could rehabilitate her testimony. Perhaps then there would be evidence to say maybe the falsest doctrine doesn't apply in this case. But that didn't happen here. There is substantial evidence supporting the adverse credibility determination, and then there was no corroborating evidence that would rehabilitate that credibility. And so for that reason, there's substantial evidence supporting the agency's decision, and the petition for review should be denied. And why? The IJ didn't have an obligation to inform her of the need to corroborate under Wren because what? Well, because there's an adverse credibility finding. Had she been found credible and credibility had been assumed, and yet the agency had still denied her application for failure to meet her burden of proof, then yes, in that circumstance, Wren would apply. Another circumstance where Wren would apply is where the adverse credibility determination is not supported by substantial evidence, and the only basis for the adverse credibility determination is the lack of corroboration. Because, again, lack of corroboration could also be a basis for an adverse credibility determination. As I understand it, that's really a possible credibility. At that point, the corroborative evidence could come forward. Where not credible at all, corroborative evidence is not even a part of this, right? It's not, Your Honor. And even if possibly credible, that's when the IJ went so far as to say the husband did not testify, the boyfriend and now husband knew all about all of this and didn't come forward to testify, and so therefore the corroboration was not there, even if possibly credible. Well, I suppose under this Court's case law, if you assume credibility, then the Wren framework would apply. But if the alien is not credible, then the Wren framework would not apply, as was the case here. All right. Thank you. Thank you. Rebuttal. Your Honor, I would like just to focus on the corroboration issue,  I think in this case the IJ erroneously conflated the two separate issues, corroboration versus credibility. The IJ actually used lack of corroborative evidence to find, as one of the reasons to find the petitioner not credible. I think the law requires that the IJ must discuss these two issues separately. So as we discussed, the two reasons that the IJ identified to support her adverse credibility determination are fraud, namely the manipulation of the American immigration system, and also the impossibility of her testimony, because those two grounds are invalid, so therefore the petitioner must be deemed to be credible. Since she was deemed credible, the case should be remanded for the BIA to make a determination whether or not the petitioner carried her burden of proof, showing that she is eligible for asylum. We're talking about jobs, really. Isn't it a fact that you're supposed to list official, formal jobs in both applications? Yes, Your Honor. And when she was quizzed about this, she said, well, it's a non-official, right? Yes, Your Honor. But there's nothing on a visa application that says you're allowed unofficial, informal jobs, is there? You're right, Your Honor. Do you know, by the way, what the visa application asks? I mean, your friend on the other side didn't know what the form says. What is it? Does it say official, unofficial? Just based on my memory, Your Honor, I may be wrong, but I think the form is called Form 160, and it does solicit the information regarding the applicant's occupation. Sorry. I have no other. Okay. Thank you, Your Honor. Thank you. Thank both counsel for their helpful arguments, and the case is submitted.
judges: SMITH, MILLER, JOHNSTONE